No. 16,093.

Kubal v. Jackson.
(203 P. [2d] 737)

Decided February 28, 1949.

Mr. Albert Ellis Radinsky, Mr. A. B. Crosswhite, Mr. Davis W. Sarvas, Mr. Paul H. Buchanan, Jr., for plaintiff in error.

Mr. H. W. Seaman, Mr. Conrad L. Ball, for defendant in error.

*In Department.*

Mr. Justice Holland delivered the opinion of the court.

The parties are here in the order they appeared in the trial court.

On April 16, 1947, plaintiff filed his complaint in tort alleging fraud on the part of the defendant and seeking damages in the sum of five thousand eight hundred dollars, and execution against the body of the defendant. Defendant moved for dismissal of the complaint on the ground that the complaint failed to state a claim against the defendant upon which relief could be granted. This motion was sustained, the complaint dismissed and plaintiff specifies three points upon which he relies for a reversal of the judgment.

The complaint, omitting the caption, is as follows:

"1.

"That on and prior to the 14th day of November, 1944, the plaintiff was the owner in fee simple of the real property hereinafter described; that on the said 14th day of November, 1944, the plaintiff signed a contract of sale and purchase for said real property, together with certain personal property thereto attached, with Ralph

H. Modesitt and Minnie Modesitt, husband and wife, as parties of the second part, which contract is hereto annexed as Exhibit 'A'; that said real and personal property is described as follows:

"Lots Two (2) and Thirty-three (33) in Block One (1), Amended Plat of Damke Addition to the City of Loveland, Colorado; also one heater, one kitchen range, and three linoleum rugs in dwelling house on said premises and all galvanized pipe on said premises.

"2.

"That the purchase price of said property was in the principal sum of Two Thousand Five Hundred ($2500.00) Dollars, with a cash payment of Six Hundred ($600.00) Dollars made by the said parties of the second part upon their signing said contract, balance of One Thousand Nine Hundred ($1900.00) Dollars payable at the rate of Twenty-five ($25.00) Dollars per month beginning January 1, 1945, and continuing on the first day of each month thereafter until said sum was fully paid, together with interest at the rate of six per cent per annum, payable monthly out of the said Twenty-five ($25.00) Dollars monthly payments; that in said contract the parties of the second part expressly agreed (page 3, lines 14-16) that they would not assign said contract or any interest therein without the written consent of the first party, who is the plaintiff..

"3.

"That at the date of the execution of said contract the plaintiff was in the military service of the United States and was located at Fort Leonard Wood, Missouri; that the defendant is, and was, at all times herein mentioned engaged in the real estate business in the City of Loveland, County of Larimer, and State of Colorado; that said defendant had in his possession a copy of said contract of sale and purchase and was well aware of the provision therein forbidding the parties of the second part from assigning said contract or any interest therein; that notwithstanding said knowledge the de-

fendant induced and pursuaded the parties of the second part to sell and assign said contract, together with all their right, title and interest therein, to the said defendant; that the plaintiff is unable to give the exact date of said sale and assignment, but asserts that it took place sometime during his absence from the state of Colorado and while he was in the military service of the United States, and that it was made without his knowledge and consent; that his first information regarding said transaction was on or about March 4, 1946, after his return to Colorado, at which time and place in the City of Loveland, Colorado, the plaintiff advised the defendant that his purchase of the rights and interests of the parties of the second part in and to said contract of sale and purchase was void and wrongful.

"4.

"That on said March 4, 1946, the plaintiff had temporarily lost possession of his copy of said contract, but was positively assured by the defendant at said time and place, after said defendant had personally examined a copy of said contract which was then in his possession, that it contained no provision against a sale or assignment by the parties of the second part, but that they might sell their interest in said contract to anyone; that defendant read certain parts of said contract to the plaintiff, but refused him permission to personally examine said contract for himself.

"5.

"That the said representations made by the defendant on said March 4, 1946, were false, and were known by the defendant at said time and place to be false and fraudulent, and were made by the defendant to the plaintiff with the intent to deceive the plaintiff and to cause him to act in accordance with said false and fraudulent representations, and by reason thereof said plaintiff did so fail to act.

"6.

"That because of the loss of plaintiff's copy of said

contract, and defendant's refusal to permit him to have the access to and to examine the copy in defendant's possession on said March 4, 1946, the plaintiff was not then entirely familiar with all the details of said contract, and especially the provision thereof regarding assignment by the parties of the second part; that by reason of his ignorance in respect to said matter of assignment as it appeared in said contract, the plaintiff believed the false statements as made to him by the defendant, and relied upon the same to his prejudice.

"7.

"That on or about the 2nd day of February, 1947, the plaintiff found his copy of said contract, and upon a reading of the same found that it did contain a provision that the parties of the second part were not to assign it or any interest therein without the written consent of the plaintiff, all of which was contrary to the false and fraudulent statements in regard thereto as made to him by the defendant; that in the month of December, 1946, the exact date thereof is unknown to the plaintiff, said plaintiff is informed and believes, and upon such information and belief alleges the truth to be that the defendant sold and assigned all his right, title and interest in said contract which he had obtained by way of sale or assignment from the original parties of the second part; that the parties with whom the defendant entered into said sale and assignment are to the plaintiff unknown, but plaintiff alleges that they are now in possession of said property under claim of ownership by reason of an alleged purchase agreement from the defendant.

"8.

"That because of the false and fraudulent representations made to the plaintiff by the defendant, and plaintiff's belief and reliance thereon, the plaintiff was lulled into security as to his rights regarding the above described property involved in this action, and for more than one year has been deprived of, and was denied

his legitimate rights and interests in and to the said property as a home and place to live in for himself and family, all to his damage in the sum of One Thousand ($1000.00) Dollars damages.

"9.

"That by reason of defendant's fraudulent acts, said defendant was enabled to make a profit of One Thousand Nine Hundred ($1900.00) Dollars from the sale of the property, which profits should rightfully belong to the plaintiff."

Exhibit A, attached to and made a part of the complaint, is the contract for sale and purchase of the real property referred to in the complaint. It provides for the sale by plaintiff to Ralph H. Modesitt and Minnie Modesitt of the property described for the sum of two thousand five hundred dollars, six hundred dollars to be paid on the signing of the contract and possession to be delivered to the purchasers. The six hundred dollars was to be paid to one H. W. Seaman as agent for the plaintiff, awaiting acceptance of the contract and deed from plaintiff. Three copies of the contract, signed by purchasers and a warranty deed, to be signed by plaintiff, were to be mailed to plaintiff on the 14th day of November, 1944, the date of the contract, to Fort Leonard Wood, Missouri; and if two copies of said agreement and the warranty deed were duly signed by plaintiff and returned to Seaman at Loveland, Colorado, on or before November 24, 1944, then the contract was to be effective as between the parties; that upon return of the copies of the contract and the warranty deed, one copy, together with the insurance policy and abstract of title and the deed, were to be placed in escrow in the First National Bank of Loveland, Colorado, where the balance of the purchase price in the sum of one thousand nine hundred dollars was to be made in monthly payments of twenty-five dollars per month, including six per cent interest, and credited to the account of plaintiff.

The contract provided that the purchasers would make no major alterations or changes in the improvements without the written consent of plaintiff; and it was agreed that they would not assign the contract or any interest therein without the written consent of plaintiff. The contract further provided that the purchasers could pay any additional amount of the principal at any time; and the bank was to be instructed that upon proof being made to it that the purchasers had paid the balance of the purchase price and all accrued interest according to the terms of the contract, then the bank was to deliver the warranty deed, abstract and insurance policy to the purchasers; provided, however, that if second parties make default of the performance of the agreement in any manner, and proof of the termination of the contract was given to the bank, then it shall deliver back to first party the warranty deed, abstract and insurance policy and the contract become permanently forfeited and cancelled; and the purchasers agree to give immediate possession of said property to the plaintiff. This is a recital of the pertinent parts of the contract.

When a complaint is tested by a motion to dismiss, as here, if a cause of action can be spelled out of the complaint in any way, then it is not vulnerable to the motion; however, a study of the complaint before us reveals the correctness of the trial court's judgment of dismissal.

It seems, from the complaint, that plaintiff's claim for relief is based upon the violation of the non-assignment clause in the contract and, further, the representation by defendant to plaintiff that such a clause was not contained in the contract.

For aught that is shown by the complaint, the defendant was not the agent of plaintiff; neither does the complaint show that the engagements of the vendee under the contract were not met and fully performed to the extent that plaintiff, the vendor, received the

full amount agreeable to him to accept as full purchase price for the property. The restrictive nonassignment clause in "Exhibit A" is not followed by a forfeiture provision on that account. The tendency of the decisions is to limit the scope of the restriction. In the case before us, it appears the restriction was for the benefit and security of plaintiff, the vendor, toward the performance of the principal covenants of the contract, and, therefore, the assignment thereof by the vendees did not operate to forfeit the contract or provide an excuse for any failure of plaintiff, the vendor, to carry out the terms of the contract provided the vendees or their assignees have fully paid or tendered the obligations due thereunder.

It is contended that the complaint fails to show that the plaintiff changed his position or was prejudiced by reliance on the representations made, and further, that the complaint fails to show that the plaintiff has suffered any damages.

It is evident from the complaint that plaintiff, although he claimed to have lost his copy of the contract, had some lingering idea as to its contents because he approached defendant with the proposition that the contract did not allow an assignment and that defendant's purchase of the rights and interests of the original vendees under the contract was void. With this in mind, and faced with an alleged refusal of the defendant to show him defendant's copy of the contract, plaintiff was then burdened with the duty of ascertaining the truth when the means therefor were within immediate reach through inquiry at plaintiff's own escrow agent, and failing in this, he is charged with all of the knowledge that he could have thereby obtained and can not now be heard to say that he has been deceived by defendant's representations. Plaintiff does not allege that the contract was not otherwise performed, and our assumption that it was fully performed, and that plaintiff received every benefit provided therein, compels us to say that

the representation alleged to have been made by defendant would not have been of injury to plaintiff and we fail to see wherein he could, under this state of facts, find ground for relief. The defendant was not a party to the contract and plaintiff had undoubtedly been receiving the payments provided for through the escrow agent, and if the terms of the contract had already been fully complied with, then plaintiff would have no further right to possession of the property of which he alleged he was deprived. We also fail to see, under the circumstances of the case, wherein plaintiff could have relied upon the alleged false representations of the defendant, to his prejudice. There is no allegation of any default on the contract and plaintiff could not have forfeited the contract on account of the assignment if the vendees, or purchasers, were ready to pay the full amount due or make tender thereof.

Assuming that the terms of the contract were fully performed and that the deed was delivered and the payments credited to plaintiff's account by the escrow bank, then the restriction in the contract immediately becomes meaningless and the damages alleged by plaintiff become imaginary and not real in fact.

For the reasons herein stated, the action of the trial court in sustaining the motion to dismiss was proper and the judgment accordingly entered, is affirmed.

Mr. Chief Justice Hilliard and Mr. Justice Stone concur.